Peter D. COBURN, Appellant

v.

PAN AMERICAN WORLD AIRWAYS, INC.

No. 82–1543.

United States Court of Appeals, District of Columbia Circuit.

Argued April 29, 1983.

Decided June 28, 1983.

Certiorari Denied Nov. 28, 1983.
See 104 S.Ct. 488.

June D.W. Kalijarvi, Washington, D.C., with whom George M. Chuzi and Pamela A. Shea, Washington, D.C., were on the brief, for appellant.

Jeffrey S. Berlin, Washington, D.C., with whom Richard L. Cys, Washington, D.C., was on the brief, for appellee.

Before TAMM and WILKEY, Circuit Judges, and McNICHOLS,* Senior District Judge, United States District Court for the District of Idaho.

Opinion for the court filed by Senior District Judge RAY McNICHOLS.

RAY McNICHOLS, Senior District Judge:

Peter Coburn appeals the district court's entry of judgment *non obstante veredicto* (j.n.o.v.) in favor of his employer, Pan Am, in Coburn's action under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (the ADEA). Coburn contends the order is improper because he made out a prima facie case of age discrimination and the company's purported reason for firing him was a pretext for age discrimination. He protests that the trial court invaded the province of the jury by weighing the evidence and assessing the credibility of the witnesses in order to overturn the jury verdict in his favor. He also contests several evidentiary rulings and the court's verdict as the trier of fact in a companion Title VII sex discrimination case.

Coburn, who served 17 years as a Pan Am employee, was 43 at the time of his termination in August of 1980. He was a management employee classified as a Reservations Supervisor in Pan Am's Reservations and Ticket Office in Washington, D.C. He was one of four Reservations Supervisors, all of whom have the same general managerial responsibilities.

In the late summer of 1980 Pan Am's financial situation was precarious. Top management instituted numerous cost-cutting measures, including a reduction of the work-force. The reduction-in-force was implemented after a Management Retirement Incentive Program failed to produce adequate cost-savings. The reduction-in-force plan implemented by management called for the termination of two management employees in the Eastern Central Region, one from the Washington Reservations and Ticket Office.

Pan Am policy mandated termination of the least productive employee in a designated peer group (groups of employees performing the same function). After designation of a peer group and its approval by Richard Carlson, Regional Managing Director, a peer group analysis was performed by Edward Cooper, manager of the Washington office. Coburn ranked lowest in his peer group and Cooper recommended his termination. Coburn was notified effective August 18, 1980.

On May 18, 1981 Coburn filed suit under the ADEA seeking both damages and equitable relief. He amended his complaint on July 2 to include a sex discrimination count under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1976) (Title VII). Before trial, Pan Am moved unsuccessfully for summary judgment. At trial, after plaintiff's presentation of the case-in-chief, the trial court denied Pan Am's motion for directed verdict. A like motion was denied before the case went to the jury. The jury returned a verdict including special interrogatories in favor of Coburn on the ADEA claim, finding Pan Am willfully terminated him because of his age. As the trier of fact, the trial court found for Pan Am on the Title VII claim. After entry of judgment of the ADEA claim, Pan Am moved for judgment n.o.v. The trial court eventually granted judgment n.o.v. and an alternative motion for new trial, ruling that no evidence supported the jury finding that Coburn was discriminated against because of his age. Coburn appeals the verdict on his Title VII claim, the judgment n.o.v. on his ADEA claim, and several other rulings of the trial court which, because of our disposition of the former issues, we do not discuss. We turn initially to the ADEA

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

claim and the propriety of the trial court's grant of judgment n.o.v.

## THE ADEA CLAIM

### Standard of Review

■ The standard for awarding a judgment n.o.v. is the same as that applied when ruling on a motion for a directed verdict. *Vander Zee v. Karabatsos,* 589 F.2d 723 (D.C.Cir.1978), *cert. denied,* 441 U.S. 962, 99 S.Ct. 2407, 60 L.Ed.2d 1066 (1979). As this court has stated, "the motion should not be granted unless the evidence, together with all the inferences that can reasonably be drawn therefrom is so one-sided that reasonable men could not disagree on the verdict." *Murphy v. United States,* 653 F.2d 637, 640 (D.C.Cir.1981), quoting *Vander Zee, supra,* 589 F.2d at 726. Judgment n.o.v.

> is proper only if "there can be but one reasonable conclusion" drawn from the evidence viewed "in the light most favorable to the plaintiffs [in this case], giving them the advantage of every fair and reasonable inference that the evidence may justify", *Foster v. Maryland State Savings and Loan Association,* 191 U.S. App.D.C. 226, 228, 590 F.2d 928, 930 (1978), *cert. denied,* 439 U.S. 1071, 99 S.Ct. 842, 59 L.Ed.2d 37 (1979).

*Metrocare v. Washington Metro. Area Transit Auth.,* 679 F.2d 922, 924–25 (D.C.Cir.1982). "The trial court may not assess the credibility of the witnesses or weigh the evidence", *id.* at 925, citing *Boutros v. Riggs National Bank, D.C.,* 655 F.2d 1257, 1258 (D.C.Cir.1981) and if "fair minded people might differ as to the conclusion appropriate", *Murphy,* 653 F.2d at 640, the court must let the jury verdict stand.

### The Merits

■ The evidentiary guidelines governing the proof in discrimination cases were first set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a suit arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The same analysis is generally applicable in ADEA cases. *Sutton v. Atlantic Richfield Co.,* 646 F.2d 407

(D.C.Cir.1981). We thus face the question whether reasonable persons could have concluded on the basis of the evidence at trial that Pan Am discriminated against Coburn on the basis of his age.

■ In the recent case of *Cuddy v. Carmen,* 694 F.2d 853 (D.C.Cir.1982), this court articulated the standard for review of a plaintiff's age discrimination action. To make out a prima facie case "a plaintiff must demonstrate facts sufficient to create a reasonable inference that age discrimination was 'a determining factor' in the employment decision." *Id.* at 856–57. By adopting the language "a determining factor" this circuit joined several other circuits which now use that standard. *See id.* at 857, n. 19. An inference of discrimination is created if the plaintiff shows that he (1) belongs to the statutorily protected age group (40–70), (2) was qualified for the position, (3) was terminated, and (4) was disadvantaged in favor of a younger person, *id.* at 857. The court went on to describe as follows:

> Once a prima facie case has been established, the employer has the burden of producing evidence tending to show that the applicant was denied employment for a legitimate, nondiscriminatory reason. If the employer does so, and if his evidence is credible, the plaintiff must show by a preponderance of the evidence that the employer's asserted legitimate reason is merely pretextual. (citations omitted). Once this stage is reached, the order and allocation of proof has served its purpose of bringing "the litigants and the court expeditiously to [the] ultimate question" of discrimination. *Burdine, supra,* 450 U.S. [248] at 253, 101 S.Ct. [1089] at 1093 [67 L.Ed.2d 207]. The plaintiff, who at all times retains the burden of persuasion, must then show by a preponderance of the evidence that age was "a determining factor" in the employer's decision.

*Cuddy,* 694 F.2d at 857.

This analysis is easily adaptable from a failure to hire situation to the context of this case, an allegedly discriminatory discharge. *Metrocare,* 679 F.2d at 922. The

issue before us is whether reasonable jurors could have decided on the basis of the evidence at trial that Peter Coburn's age was a determining factor in Pan Am's decision to fire him.

The District Court granted judgment n.o.v. for two reasons. The court first ruled that Coburn failed to prove a prima facie case because none of the evidence at trial would support an inference of discrimination, and for a jury to so infer would be a result of "impermissible conjecture and surmise". *Mattivi v. South African Marine Corp., "Huguenot",* 618 F.2d 163, 167–68 (2d Cir.1980). The District Court further ruled that even assuming plaintiff proved a prima facie case, the evidence was insufficient to support a jury finding that defendant's reasons for terminating Coburn were a pretext for discrimination. According to the District Court, the record was devoid of any evidence that Coburn's age was a determining factor in Pan Am's decision to fire him. Because we believe Coburn failed to carry his burden of proving discriminatory motive, we affirm the trial court's judgment.

The District Court rendered its opinion on May 7, 1983. Subsequent to that time, this court decided the *Cuddy* case, in which we articulated the previously outlined framework for analyzing ADEA claims. Thus the trial court did not have the benefit of our reasoning in *Cuddy* for guidance. While the *Cuddy* decision has much bearing on this case, it does not compel us to reverse.

■ We rule initially, contra to the district court, that Coburn created a reasonable inference of discrimination by making out a prima facie case under the ADEA. Coburn was (1) 43 years old, (2) acknowledged by all to be qualified as a Reservations Supervisor, and (3) was fired while (4) younger persons were retained and others later promoted. The evidence produced at trial was clearly sufficient to support a jury finding of a prima facie case based on *Cuddy*.

■ Pan Am urges us to require an ADEA plaintiff to prove something extra to make out a prima facie case in a reduction-in-force situation. Pan Am's rationale is that with a reduction-in-force the discharged employee will virtually always be qualified. Thus, anyone in the protected age group will presumptively have a cause of action under the ADEA. They therefore argue that direct evidence of discrimination should be required to make out a prima facie showing in a reduction-in-force case. *Cuddy* makes it clear that direct evidence of discrimination is not required to prove a prima facie case and create an inference of discrimination. *Id.* at 856–57. We believe the exigencies of a reduction-in-force can best be analyzed at the stage where the employer puts on evidence of a nondiscriminatory reason for the firing. In this manner the employee always retains the burden of proving discrimination while the employer's situation is analyzed on a case-by-case basis.

■ In the face of Coburn's prima facie showing we now turn to the question of Pan Am's articulated nondiscriminatory reason for firing Coburn. Pan Am's evidence demonstrated a company in serious financial straits seeking to cut costs in an attempt to survive. The reduction-in-force was instituted to reduce what Pan Am viewed as a surplus of management personnel. The guidelines called for termination of the "least productive" employee in a designated peer group. Pan Am, using a numerical ranking system, evaluated its Reservations Supervisors on the basis of qualifications, abilities, productivity, and length of service. Additional credit was given to employees over 40 years of age. Coburn was terminated when he was evaluated the least productive. We find that Pan Am carried its burden of proffering a legitimate, nondiscriminatory reason for terminating Coburn by instituting a written policy, following it to the letter, and making an employment decision based on its results. The procedure satisfied Pan Am's statutory burden.

■ As in *Cuddy,* 694 F.2d at 857, Coburn then was required to show by a preponderance of the evidence that Pan Am's

asserted reason was pretextual. Coburn pointed to numerous alleged inconsistencies and offered the testimony of several witnesses in attempting to show that Pan Am manipulated its peer group analysis in a manner calculated to conceal age discrimination. The jury was apparently convinced by this evidence. The trial court, though, disagreed, finding that no reasonable jury could have so ruled. We now focus on that stage of the litigation, because the shifting evidentiary burdens had served the purpose of bringing "the litigants and the court expeditiously and fairly to the ultimate question" of discrimination. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981).

Coburn first notes that both employees terminated in the Eastern Central Region of Pan Am's organizational structure were over 40. This is pure coincidence. The oldest employee, age 51, in Coburn's Washington Reservations and Ticket Office was retained. The other two managers retained in Washington were close to Coburn in age, though slightly younger. No other evidence was offered to show that Pan Am terminated a disproportionate number of older employees. On this record no pattern of age discrimination could reasonably be inferred.

Coburn finds suspicious Pan Am's attempt to induce managers aged 55–65 to retire early. Early retirement is a common corporate practice utilized to prevent individual hardship. It is a humane practice well accepted by both employers and employees, and is purely voluntary. The evidence showed that Pan Am was justified in attempting to reduce its costs, and voluntary retirement was clearly a fair attempt to do so. It supports not a hint of age discrimination.

Coburn takes issue with the composition of his peer group. He complains because two younger women who were employed as Trainers were not included with his category of Reservations Supervisors. However, the evidence makes it clear the two positions were distinct and not properly combinable under established Pan Am policies. Coburn also relies on the fact that these two female employees were later made Reservations Supervisors to show discrimination. However, these employees were only promoted after implementation of a merger between Pan Am and another airline. The merger resulted in less need for trainers and an increased volume of sales, an increase creating a new need for more Reservations Supervisors. That these trainers were promoted does not indicate an age discriminatory animus on Pan Am's part.

Coburn attempts to demonstrate inconsistencies between prior Pan Am evaluations and the reduction-in-force evaluation. He claims he was the highest rated supervisor in February 1980, yet rated lowest for purposes of the reduction-in-force in August, just six months later. The short answer to this contention is that it is not supported by the evidence. All four Reservations Supervisors were rated "good" in February and given substantially similar ratings on more specific categories. The reduction-in-force criteria were specifically designed to determine the "least productive" employee. Coburn was fired only after ranking lowest overall after being rated in four distinct aspects of his job, and after being given extra credit for being over 40 years old. While Coburn disputed his rating in several regards, he produced no evidence that age was the reason he was rated low. Therefore, evidence of Pan Am's motive in the peer group analysis is "one sided" against the jury's verdict. *Vander Zee v. Karabatsos,* 589 F.2d 723, 726 (D.C.1978). We must conclude that under any view of the case, the evidence concerning age discrimination and the reasonable inferences to be drawn therefrom simply do not support a finding that the peer group analysis was manipulated to Coburn's disadvantage because of his age.

Because none of Coburn's other contentions lend support to his claim, we do not discuss them in detail. We only add that evidence of age discrimination cannot be gleaned from them.

The ADEA protects employees only against unlawful age discrimination. Coburn draws a compelling picture of a longtime loyal employee who may have been treated less than fairly. But the record is devoid of any evidence that age was a "determining factor" in Pan Am's decision to terminate him. *Cuddy,* 694 F.2d at 857. Coburn failed to carry his burden of proving discriminatory motive by a preponderance of the evidence and for a jury to find in his favor it would have to indulge in an impermissible speculation. The trial court properly granted judgment n.o.v. on Coburn's ADEA claim.

#### THE TITLE VII CLAIM

■ Our review of Coburn's Title VII sex discrimination cause of action is much more limited. Because the trial court acted as a trier of fact, we must affirm his findings unless they are "clearly erroneous". Fed.R.Civ.P. 52(a). Coburn's appeal of the Title VII judgment hinges on evidentiary rulings made by the trial court. While the court was restrictive on the evidence allowed in, we are unable to say the court abused its considerable discretion. On the state of the record, we are not "left with the definite and firm conviction that a mistake has been committed". *United States v. Gypsum,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). We are convinced that the trial court's rulings on the Title VII claim are not clearly erroneous.

#### CONCLUSION

We affirm the trial court's grant of judgment n.o.v. on Coburn's ADEA claim. Because of our holding we need not rule on the companion issues of the conditional granting of a new trial, the refusal to reinstate Coburn, and the denial of liquidated damages. We also affirm the judgment for Pan Am on the Title VII claim.