Ute HAYMAN, Appellant,

v.

NATIONAL ACADEMY OF SCIENCES, et al., Appellees.

No. 92–7256.

United States Court of Appeals, District of Columbia Circuit.

Argued March 18, 1994.

Decided May 20, 1994.

Barbara B. Hutchinson, New Carrollton, MD, argued the cause and filed the briefs for appellant/cross-appellee.

Charles L. Warren, Washington, DC, argued the cause for the appellees/cross-appellant. With him on the briefs were Joseph P. Esposito, Mark V. Holden, James R. Wright, and Audrey Byrd Mosley.

Before MIKVA, Chief Judge, SILBERMAN and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Chief Judge MIKVA.

MIKVA, Chief Judge:

Appellant was Administrative Assistant to the Executive Director of the Food and Nutrition Board ("FNB") of the National Academy of Sciences ("NAS"). Claiming that her job performance was unsatisfactory, NAS discharged Appellant and replaced her with a younger worker. Appellant filed suit under the Age Discrimination in Employment Act ("ADEA") and the jury returned a verdict in Appellant's favor. Upon a motion from NAS, the district court entered judgment notwithstanding the verdict, finding that Appellant's prima facie case was deficient and that the record evidence was insufficient to support the jury finding. Although we find that the district court improperly revisited the sufficiency of Appellant's prima facie case, we affirm the district court's judgment based on the insufficiency of the evidence presented below.

## I. Background

Appellant began her employment with NAS in 1969 as a grade 5 secretary. For the next 19 years, she worked for several different supervisors, consistently receiving above average performance reviews and regular promotions. In 1984, Appellant became the Administrative Assistant to the Executive Office of the Commission of Life Sciences, a grade 9 position. Although NAS eliminated that position in 1988, NAS rehired Appellant as a grade 9 Administrative Assistant to the Executive Director of the FNB.

In April 1990, Dr. Catherine Woteki became Executive Director of the FNB. As Administrative Assistant to Dr. Woteki, Appellant handled Dr. Woteki's correspondence, scheduled her meetings, prepared her travel vouchers and reimbursements, and coordinated her schedule and activities with other office members. In August 1990, Dr. Woteki voiced her dissatisfaction with nearly every aspect of Appellant's job performance. Dr. Woteki recommended that she and Appellant meet daily to set the day's work priorities, and that Appellant take advanced word processing classes and adhere to specific deadlines for processing travel vouchers.

On December 27, 1990, Dr. Woteki informed Appellant that her job performance had not improved to Dr. Woteki's satisfaction and that she was being placed on 30 days probation. The deficiencies Dr. Woteki noted in Appellant's job performance included tardiness, difficulty in setting work priorities and in coordinating work with other secretaries, spending too much time on personal calls, untimely and ineffective completion of routine administrative tasks, and insufficient proficiency with NAS's word processing software.

During Appellant's probationary period, Dr. Woteki observed no improvement in Appellant's job performance. Nonetheless, NAS extended Appellant's probationary period an additional 30 days. Dr. Woteki remained dissatisfied with Appellant's job performance throughout the probationary periods and, on February 28, 1991, she recommended Appellant's termination. NAS discharged Appellant on April 12, 1991.

NAS posted the Administrative Assistant's position after Appellant's discharge. Appellant reapplied for the position but NAS hired Laura Pierce, age 28, instead. Appellant contends that age was the determining factor in NAS's decision to fire her and to hire Ms. Pierce in her place.

At trial, NAS moved for a directed verdict both at the conclusion of Appellant's case-in-chief and at the close of all evidence. The court denied these motions and submitted the case to the jury. On August 3, 1992, the jury returned a verdict in Appellant's favor and awarded her $100,000 in back pay and benefits. On a motion by NAS, the district court vacated the jury's verdict and entered judgment as a matter of law for NAS. The court found that Appellant's prima facie case was deficient because she failed to demonstrate that she was genuinely qualified for the Administrative Assistant's position and that the record evidence was insufficient to support a jury finding that NAS had discriminated against her on the basis of age. Appellant argues on appeal that, in granting judgment n.o.v., the court improperly revisited the sufficiency of her prima facie case and

improperly invaded the province of the jury by assessing the credibility of the witnesses and the weight of the evidence presented at trial.

## II. Discussion

### A. Standard of Review

 This court reviews *de novo* a lower court's directed verdict or entry of judgment as a matter of law. An entry of judgment as a matter of law is warranted only if "the evidence, together with all inferences that can reasonably be drawn therefrom, is so one-sided that reasonable men could not disagree on the verdict." *Carter v. Duncan–Huggins, Ltd.,* 727 F.2d 1225, 1227 (D.C.Cir. 1984). In making that determination, a court may not assess the credibility of witnesses or weigh the evidence. *Coburn v. Pan American World Airways, Inc.,* 711 F.2d 339, 342 (D.C.Cir.), *cert. denied,* 464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 683 (1983).

### B. Appellant's Prima Facie Case

 To establish a prima facie case of age discrimination under the ADEA, Appellant "must demonstrate facts sufficient to create a reasonable inference that age discrimination was 'a determining factor' in the employment decision." *Cuddy v. Carmen,* 694 F.2d 853, 856–57 (D.C.Cir.1982). A plaintiff creates such an inference by showing that (1) she is a member of the statutorily protected age group; (2) she was qualified for the position; (3) she was discharged from and/or rejected upon reapplication to her position; and (4) the position remained open and was subsequently filled by a younger person who does not fall within the statutorily protected class. *See id.* at 857.

Appellant clearly established that (1) she was a member of the protected class; (2) she was discharged from her Administrative Assistant's position at NAS and was rejected upon reapplying for that position; and (3) NAS hired a person outside of the protected class to fill the position. Because this circuit has not construed the term "qualified" for purposes of establishing a prima facie case of discriminatory firing under the ADEA, it is less clear whether Appellant satisfied that element of her prima facie case. But that issue is not before us on appeal.

In *United States Postal Service Bd. of Govs. v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983), the Supreme Court explained that "[w]here the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant." Because Appellant's claim was fully tried on the merits below, the district court had no reason to base its judgment on supposed deficiencies in Appellant's prima facie case. Once the court allowed the employer's full rebuttal evidence to come in, it faced the "ultimate question of discrimination *vel non*"—"whether the defendant intentionally discriminated against the plaintiff" on the basis of age. *Id.* at 714–15, 103 S.Ct. at 1481–82. That question turns on the sufficiency of Appellant's evidence as distinguished from the sufficiency of her prima facie case.

### C. Sufficiency of the Evidence

#### 1. NAS's Nondiscriminatory Explanation

 NAS claimed that it discharged Appellant because of her unsatisfactory job performance, not because of her age. Appellant's immediate supervisor, Dr. Catherine Woteki, testified that Appellant had displayed all of the deficiencies enumerated above. Dr. Woteki also testified that Appellant had difficulty completing routine tasks—such as ordering office supplies, typing correspondence, processing travel vouchers, and scheduling meetings—in a timely and effective manner. Dr. Woteki further testified that she had received complaints about Appellant from other FNB members. In addition to Dr. Woteki's testimony, Dr. Richard Havel, who had chaired the FNB from 1988 through 1990, testified by deposition that Appellant's job performance had deteriorated in recent years and specifically noted her occasional failure to notify Board members of meetings and to send Board members copies of the minutes of the meetings.

On December 27, 1990, Dr. Woteki committed to writing the shortcomings she perceived in Appellant's job performance and placed Appellant on probation. Neither Dr. Woteki nor Dr. Bond, Executive Officer of

the Institute of Medicine, noted any significant improvement in Appellant's job performance during her extended probationary period. In addition, their impression was that Appellant made little effort to correct the problems that her supervisor and others had noted. NAS contends that it accorded Appellant every opportunity to improve her performance but that her "demonstrated skills and abilities [were] not a good match with the particular requirements" of her position. Accordingly, NAS alleges that it discharged Appellant lawfully.

## 2. Appellant's Evidence of Discrimination

In pressing her age discrimination claim, Appellant argues that NAS discharged her, not because of her unsatisfactory job performance, but because of her age. To prevail under the ADEA, Appellant must establish by a preponderance of the evidence that age was a determining factor in her discharge. *See e.g., Krodel v. Young,* 748 F.2d 701, 706 (D.C.Cir.1984); *cert. denied,* 474 U.S. 817, 106 S.Ct. 62, 88 L.Ed.2d 51 (1985); *Coburn v. Pan American World Airways, Inc.,* 711 F.2d 339, 342 (D.C.Cir.), *cert. denied,* 464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 683 (1983). Although Appellant has no direct evidence to support this claim, indirect evidence may suffice. *See United States Postal Service Bd. of Govs. v. Aikens,* 460 U.S. 711, 714 n. 3, 103 S.Ct. 1478, 1481 n. 13, 75 L.Ed.2d 403 (1983). The question on review is whether Appellant offered sufficient evidence from which a reasonable jury could infer that, "but for" her age, NAS would have retained Appellant in the Administrative Assistant's position. *See Krodel,* 748 F.2d at 706. We find she did not.

Appellant offered approximately nine pieces of evidence from which she claims a reasonable inference of age discrimination can be drawn. First, either in the course of or shortly after meeting with Charles Starliper, Director of Personnel, on December 7, 1990, Dr. Woteki made the following written notation: "meet and discuss performance issues. Assess at end of 30 days. Then 2 weeks notice." Second, at a December 14, 1990 meeting of the FNB, Dr. Woteki indicated that Appellant would be leaving her position in 30–45 days. Third, Dr. Woteki responded "It won't work" when, in their

December 27th meeting, Appellant asked what would happen if she cured all the deficiencies that Dr. Woteki noted in her work. Fourth, before December 27th, Dr. Woteki had not informed Appellant of most of the work performance deficiencies that she later cited. Fifth, Appellant claims that her written rebuttal to Dr. Woteki's memorandum of December 27th "upset [Dr. Woteki] quite a bit." Sixth, in August 1990, Dr. Woteki asked Appellant to improve her word processing skills. Seventh, at the December 14th meeting of the FNB, Dr. Richard Havel, former Chair of the FNB, indicated that he observed some "deterioration" in Appellant's work performance in the past two years. Eighth, Dr. Woteki failed to follow NAS personnel procedures in placing Appellant on probation and discharging her. Ninth, NAS's contribution to Appellant's NAS retirement plan would increase to 33% of Appellant's salary when Appellant turned 55 but would cease upon Appellant's dismissal.

Although items 1–4 are Appellant's strongest evidence of age discrimination, they are also fully consistent with the nondiscriminatory explanation that NAS offers for its actions. Dr. Woteki testified that, as of her December 7th meeting with Mr. Starliper, Director of Personnel, and her December 14th meeting with the FNB Board, she had no firm intention to fire Appellant. Although her notations and comments might suggest otherwise, she explained that she was "telling the board what [she] expected to happen" because "[b]ased on the experience that [she] ha[d] in supervising employees, the kinds of performance problems that Mrs. Hayman exhibited were ones that employees have great difficulty with in making improvements." Moreover, even if Dr. Woteki's intention to fire Appellant was fully developed by December, a reasonable juror could not thereby infer that age was the determinative factor behind that intention. Thus, unless the remainder of Appellant's evidence supports an inference of age discrimination, this court must affirm the district court's entry of judgment as a matter of law.

Dr. Woteki's alleged failure to inform Appellant promptly of the deficiencies in her work and her distress at Appellant's written rebuttal of those deficiencies do not support an inference of age discrimination. First,

Dr. Woteki testified that she repeatedly spoke with Appellant about shortcomings in Appellant's performance. Moreover, even if the jury discredits Dr. Woteki's testimony, the only inference that Appellant's evidence would support is that Dr. Woteki's supervisory and/or interpersonal skills were lacking, not that her conduct toward, impressions of, or actions regarding Appellant were in any way connected to Appellant's age.

Similarly, an inference of age discrimination cannot reasonably be drawn from Dr. Woteki's dissatisfaction with Appellant's word processing skills. Poor word processing skills would be fully consistent with Dr. Woteki's testimony that it took Appellant an inordinately long time to complete relatively basic secretarial tasks. Even if Dr. Woteki's impression of Appellant's word processing skills was mistaken, there is nothing to suggest that this false impression derived from stereotypical preconceptions about older people's proficiency with newer office technology.

Dr. Havel's statement that Appellant's performance had "deteriorated" also cannot support an inference of age discrimination. Dr. Havel explained that he was "referring to the things that I testified to earlier in terms of serving the needs of board members and committee members." He specifically mentioned the "[f]ailure of communications to arrive on repeated occasions." Also militating against inferring age discrimination from Dr. Havel's comment is a section in NAS's personnel policies manual entitled "Deteriorating or Unsatisfactory Job Performance." In sum, Dr. Havel's use of the term "deterioration" simply does not create a reasonable inference of age discrimination.

Similarly, Dr. Woteki's failure to complete a written performance evaluation on Appellant before placing her on probation also does not support such an inference. Dr. Woteki testified that, being relatively new on the job herself, she was not fully acquainted with NAS personnel policies. Moreover, we fail to see how this procedural defect is probative of age discrimination.

Finally, the fact that NAS's contribution to Appellant's NAS retirement plan was tied to Appellant's age might support an inference of age discrimination if there were any evidence that Dr. Woteki knew Appellant's age and was familiar with the workings of the retirement plan. However, there is no evidence that Dr. Woteki had knowledge of either. To the contrary, Dr. Woteki's lack of familiarity with NAS personnel procedures suggests that she was at least equally unaware of the workings of NAS retirement plans.

### III. Conclusion

Appellant did not present evidence below from which a reasonable jury could infer that Appellant's age was the determining factor in her discharge from NAS. None of the individual pieces of evidence that Appellant proffered creates a reasonable inference of discrimination and their whole is no greater than the sum of their parts. NAS sustained its burden of production to rebut any prima facie case but Appellant failed to sustain her burden of proof. The district court's judgment is

*Affirmed.*