Robert ELLIOTT, Plaintiff,

v.

**BRITISH TOURIST AUTHORITY, Department of Heritage, British Tourist Authority (New York), Defendants.**

**No. 96 CIV 9154 NRB.**

United States District Court,
S.D. New York.

April 30, 2001.

Brian A. Mangines, Thomas E. Mangines, Mangines & Burke, LLC, Fairfield, CT for Plaintiff.

Paul W. Werner, Conner & Chopnick, New York City, for Defendants.

## OPINION AND ORDER

BUCHWALD, District Judge.

Plaintiff Robert Elliott ("plaintiff" or "Elliott") is a former employee of defendant British Tourist Authority (BTA), an agency of the British Government. Having been terminated by the BTA in March, 1996, plaintiff brought this action for age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., and the New York State Human Rights Law, N.Y. Exec. Law § 296(3)(a). Pursuant to 28 U.S.C. § 1367, plaintiff also brings pendant state law claims of breach of contract and a breach of the implied covenant of good faith and fair dealing. Now pending is defendant's motion for summary judgment, pursuant to Fed.R.Civ.P. 56. For the following reasons, defendant's motion is granted.

## FACTUAL BACKGROUND

The following facts are undisputed.[1] Plaintiff commenced his employment by BTA in 1969 as a marketing executive. He continued as an at-will employee of BTA for twenty-seven years, until his eventual termination effective March 31, 1996. During that time, he generally received satisfactory performance reviews. However, in August, 1995, plaintiff received a "below average" performance rating.

On or about February 26, 1996, when plaintiff was sixty years old, he was informed by Jeffrey Hamblin ("Hamblin"), the General Manager of BTA, that his position was being eliminated due to budget cuts. When terminating plaintiff, Hamblin informed him that he would receive income from BTA through a consulting contract. *See* Deft. Mem, Exh. A, at 77. At the time of his termination, plaintiff received forty-five weeks severance pay, to-

---

**1.** Neither party has complied with Local Civil Rule 56.1, which requires that in connection with a summary judgment motion, each party submit "a separate, short and concise statement of the material facts" as to which the party "contends there is no genuine issue to be tried." Defendant's reply memorandum, however, includes five specific points of contention in response to plaintiff's statement of the facts in his opposition papers. We will thus consider the remainder of plaintiff's statement of the facts, which were not contested in defendant's reply, to be admitted.

taling $35,447.65, and early receipt of his pension in the amount of $1650 per month.

On March 26, 1996, plaintiff filed a complaint with the EEOC alleging age discrimination, and filed the instant action in December, 1996. Plaintiff has not received any consulting contracts with BTA since his termination.

Some facts, however, are in dispute. First, plaintiff asserts that defendant hired a young female employee in her 20s to assume his duties. He further alleges that he was assigned to travel throughout the United States with her to orient her to his job responsibilities and to introduce her to his contacts. Additionally, Elliott alleges that at the time of his termination, there existed two open positions at BTA for which he was qualified and to which he requested reassignment. However, defendant contests each of these three allegations, asserting that plaintiff has provided no evidence in support of any of them.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is properly granted " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law.' " *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir.1997) (quoting Fed.R.Civ.P. 56(c)). The Federal Rules of Civil Procedure mandate the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In reviewing the record, we must assess the evidence in "a light most favorable to the nonmoving party" and resolve all ambiguities and "draw all reasonable inferences" in its favor. *American Casualty Co. v. Nordic Leasing, Inc.*, 42 F.3d 725, 728 (2d Cir.1994); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Nonetheless, the non-moving party must affirmatively set forth at least some facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505.

■ We are mindful that summary judgment is "ordinarily inappropriate" in the context of a workplace discrimination case because the allegations usually require an exploration into an employer's true motivation and intent for making a particular employment decision. *See Patrick v. LeFevre*, 745 F.2d 153, 159 (2d Cir.1984). Thus, "trial courts must be especially chary in handing out summary judgment in discrimination cases." *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir.1996); *see also Bickerstaff v. Vassar College*, 196 F.3d 435, 448 (2d Cir. 1999) ("Employers are rarely so cooperative as to include a notation in the personnel file that the [adverse employment action] is for a reason expressly forbidden by law.").

However, this caution does not absolve the plaintiff from the responsibility of producing sufficient evidence from which a reasonable juror could return a verdict in his favor. *See Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (1986); *see also Lane v. Sotheby Parke Bernet, Inc.*, 758 F.2d 71, 72 (2d Cir.1985) (affirming grant of summary judgment in Title VII action where plaintiff failed to establish *prima facie* case).

### B. ADEA Claims

■ The ADEA provides that it is "unlawful for an employer . . . to fail or refuse or otherwise to hire or to discharge any individual or otherwise discriminate

against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 629(a)(1). The critical issue in an ADEA case, as in any discrimination case, is one of proof of discriminatory intent on the part of the defendant. "[L]iability depends on whether the protected trait (under the ADEA, age) *actually* motivated the employer's decision." *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993) (emphasis added).

█ Thus, because allegations of age discrimination are, as here, so often based on circumstantial evidence, they are analyzed using the three-step burden-shifting analysis established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 639 (2d Cir.2000).

Under the *McDonnell Douglas* framework, our first inquiry is whether plaintiff has established a prima facie case of discrimination. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If the plaintiff has so pled, then a presumption of discriminatory animus is established and the burden shifts to defendant to produce evidence of a legitimate, non-discriminatory reason for its actions. *See Texas Dep't. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Assuming that defendant can produce such a justification, then the presumptions and burdens of the *McDonnell Douglas* framework drop away, and only the ultimate question of "discrimination *vel non* " remains. *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *U.S. Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 714, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)).

Plaintiff has adequately, if just barely, stated a prima facie case. However, even though he has adequately pled an ADEA claim, he has not marshaled sufficient "evidence from which the factfinder can reasonably find the essential elements of the claim." *James v. New York Racing Ass'n.,* 233 F.3d 149, 154 (2d Cir.2000). Thus, for the following reasons, summary judgment in favor of the defendant on plaintiff's alleged discriminatory discharge is appropriate.

### 1. Prima Facie Case

█ In order to plead a prima facie case, plaintiff must show (1) membership in a protected class, (2) qualification for the position, (3) an adverse employment action, and (4) that the "adverse employment decision was made under circumstances giving rise to an inference of unlawful discrimination." *Byrnie v. Town of Cromwell Bd. of Educ.,* 243 F.3d 93, 101 (2d Cir.2001).

█ The evidentiary burden on plaintiff in establishing a prima facie case is "minimal". *Byrnie,* 243 F.3d at 101; *see also Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994) (describing burden of establishing a prima facie case as *"de minimis "*). Since, at the summary judgment stage, it is not this Court's role to resolve questions of fact, we must determine only "whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive." *Id.* at 38.

There is no dispute that plaintiff has established the first three elements of a prima facie case. First, he is older than forty years of age, and thus falls within the class protected by the ADEA. *See* 29 U.S.C. § 631(a). Second, he was clearly qualified for the position in that he performed it to BTA's satisfaction for a num-

ber of years.[2] Third, his termination obviously qualifies as an adverse employment action. *See Reeves*, 530 U.S. at 141, 120 S.Ct. 2097.

Whether the circumstances of plaintiff's termination give rise to an inference of discrimination is a much closer question. There are three allegations in the complaint that could possibly support such an inference. First, plaintiff states that a female employee in her late 20's was hired to replace him, and that he was asked to train her in his job responsibilities prior to his termination. Second, he states that BTA refused to transfer him to either of two vacant positions at the agency. Third, plaintiff alleges that no individual not part of the protected class—indeed, no other individual at all—was affected by the reduction in force.

■ It is ordinarily the case that a plaintiff's replacement by a significantly younger employee is sufficient evidence to establish a prima facie case. *See Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir.), *cert. denied*, 530 U.S. 1261, 120 S.Ct. 2718, 147 L.Ed.2d 983 (2000) (finding inference of discrimination where plaintiff's duties were transferred to employees eighteen and twenty-five years younger than him); *see also O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (same). However, plaintiff's allegation that he was replaced by a much younger employee is not supported by even a scintilla of record evidence other than plaintiff's self-serving affirmations. In response to defendant's interrogatories, plaintiff has failed to identify the young hire with whom he allegedly

traveled across the nation on an orientation tour. *See* Deft. Mem., Exh. 6, at 5–8. It cannot be the case that completely unsupported, self-interested assertions meet the standard for establishing a prima facie case, liberal though that standard may be.

■ Similarly plaintiff offers no evidence regarding the two other positions at BTA for which he was allegedly turned down. The failure to allow an individual who is terminated through a restructuring to transfer into a similar position may qualify as evidence of possible age discrimination. *See Tarshis v. The Riese Org.*, 211 F.3d 30, 37–38 (2d Cir.2000). However, once again plaintiff offers nothing more than his own affidavit in support of these allegations. *See* Pl. Mem., Exh. B. Such conclusory factual statements will not suffice to state even a prima facie case.

■ However, the evidence proffered also reveals that plaintiff, a member of a protected class, was the only individual terminated as part of the alleged budgetary cutbacks. A number of Courts of Appeals have held that when a reduction in force takes place, if that personnel action disproportionately affects members of a protected class, the requisite showing for a prima facie case is made.

For example, the court in *Washington v. Garrett*, 10 F.3d 1421, 1433–34 (9th Cir. 1993), found that when a reduction in force took place in which the plaintiff, a member of a protected class, was the only individual terminated, the plaintiff had adequately pled a prima facie case. That court noted that "when an employee alleges that her position was abolished for discriminatory reasons, the fact that she was not replaced by someone not of her protected class is not fatal to her claims." *Id.* at 1433.[3]

---

**2.** Plaintiff alleges that his negative performance review in 1995 was a false and malicious attempt to lay the groundwork for his termination. However, defendant justifies plaintiff's termination on the grounds of budgetary cutbacks. The argument that the 1995 review was unfairly harsh thus bears little

relevance to the outcome of this motion, because defendant concedes that he was qualified for the position and that his termination was unrelated to performance in any way.

**3.** Even in *Garrett*, a race discrimination case, the record included at least some evidence of

This case has been repeatedly cited by the Second Circuit with approval as one of several methods by which a plaintiff may establish his prima facie case of discrimination. *See, e.g., Howley v. Town of Stratford,* 217 F.3d 141, 150 (2d Cir.2000) ("Circumstances from which invidious discrimination may be inferred include preferential treatment given to employees outside the protected class.") (citing *Garrett* ); *Chertkova v. Connecticut General Life Ins. Co.,* 92 F.3d 81, 91 (2d Cir.1996) (same).

Thus, because plaintiff is a member of a protected class, and was the sole employee terminated in 1996 due to budget cuts, we find that a prima facie case of age discrimination exists. Our Court of Appeals has emphasized that a "plaintiff whose job was eliminated upon his discharge, [and who] failed to show that a new employee took over his job after discharge or even that the position was left open" may still plead a prima facie case of age discrimination if the plaintiff can show some kind of direct or statistical evidence of discrimination. *Montana v. First Federal Savings & Loan Assn. of Rochester,* 869 F.2d 100, 104 (2d Cir.1989). *See also Chertkova,* 92 F.3d at 91 ("[T]here is no unbending or rigid rule about what circumstances allow an inference of discrimination when there is an adverse employment decision.")

### 2. Summary Judgment Analysis

 Plaintiff having pled a prima facie case, the burden then shifts to defendant to articulate a "legitimate, non-discriminatory reason" for the adverse employment action. *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. That burden "is one of production, not persuasion; it can involve no credibility assessment." *Reeves,* 530 U.S. at 141, 120 S.Ct. 2097 (quotations omitted). BTA has

adequately met that burden here by justifying plaintiff's termination as the result of budget cuts. *See* Deft. Mem., Exh. A, at 61 (Letter from Hamblin to Elliott, February 26, 1996); *id.* at 77 (Memo from Hamblin to all BTA staff in the Americas).

Once a showing of a non-discriminatory reason for the adverse employment action is made by defendant, all presumptions and burdens disappear. Accordingly, we analyze the sufficiency of the evidence in this discrimination case as we would in any other case. *See Reeves,* 530 U.S. at 143, 120 S.Ct. 2097; *Schnabel v. Abramson,* 232 F.3d 83, 89 & n. 5 (2d Cir.2000) (The amount of evidence "needed to sustain an inference of discrimination is the same as that needed to sustain the ultimate inference in any other civil case.")

The quantum of proof that a plaintiff must provide in order to survive a summary judgment motion was recently revisited by the Supreme Court in *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). In that case, a unanimous Court overturned the Fifth Circuit's *per se* rule (known as the "pretext plus" rule) that "a prima facie case of discrimination, combined with sufficient evidence for the trier of fact to disbelieve the defendant's legitimate, nondiscriminatory reason for its decision, is insufficient as a matter of law to sustain a jury's finding of intentional discrimination." *Id.* at 146, 120 S.Ct. 2097.

For the purposes of the case at bar, however, the most relevant aspect of the *Reeves* decision is the Court's ultimate conclusion that the inquiry at the summary judgment stage of a discrimination case is necessarily a case-specific one that will vary based on the totality of the circumstances in any given case. *See id.,* at 148–

---

"an atmosphere of racial tension" in the workplace. *Id.,* at 1434. This lies in stark contrast to the instant case, and serves to

highlight the thinness of the *prima facie* case here.

49, 120 S.Ct. 2097; *Schnabel,* 232 F.3d at 90 ("[T]he Supreme Court's decision in *Reeves* clearly mandates a case-by-case approach ....").

As the Second Circuit has noted in interpreting the *Reeves* decision, the *Reeves* Court's rejection of the Fifth Circuit's rule does not mean that summary judgment is no longer appropriate in employment discrimination cases. Judge Cabranes observed in *Schnabel v. Abramson,* 232 F.3d 83 (2d. Cir.2000), that *Reeves* struck down the *per se* rule that an ADEA claimant always must offer more than a prima facie case and some evidence of pretext. *See Schnabel,* 232 F.3d at 90. This is logically quite different from a rule stating that if plaintiff has established a prima facie case and offered evidence of pretext, summary judgment is never available to a defendant. The *Schnabel* court made quite clear that *Reeves* did not go so far as to require the inverse of "pretext plus"—that if "pretext plus" is established, a plaintiff's case *per se* reaches a jury.[4]

■ Thus, in assessing the sufficiency of plaintiff's proof we follow the post-*Reeves* rule that a prima facie case plus pretext evidence may be enough to reach a jury, but is not always sufficient to do so. *See id.* at 90–91.

■ Here, Elliott has not brought forth sufficient evidence to defeat defendant's summary judgment motion. In weighing the evidence proffered by both parties, drawing all inferences in favor of the plaintiff as we must, we find that no reasonable jury could conclude that the BTA acted with discriminatory intent.

On the one hand, there is a lengthy documentary record that defendant had long sought to eliminate Elliott's position due to the apparently disproportionately high cost of his employment.[5] Thus, no factfinder could conclude that this is a case in which a defendant manufactured a pretextual record, after allegations of discrimination, to hide an illicit motive. In fact, the documents produced by defendant in response to plaintiff's document requests (but cited by neither party in their moving papers) illustrate that Elliott's position had in fact been a candidate for a budget cut as far back as 1992. For example, in 1992 the Executive Vice President for North America, Don Ford, wrote in a memorandum that "Robert [Elliott] has performed well for BTA over the years, but he is vastly overpaid, the reasons for which go back before my time.... I would not propose to replace Robert, but we should need a Marketing Executive at a cost to BTA in a full year of around $26,000." *Id.,* at 122 (Memorandum by Don Ford, February 3, 1992). At that time, the annual cost of employing Elliott was approximately $76,000. The elimination of his position would have saved BTA at least $50,000 in annual costs,

---

4. It was, prior to *Reeves,* the law in the Second Circuit that a prima facie case plus some pretext evidence is not always sufficient to reach a jury. *See Fisher v. Vassar Coll.,* 114 F.3d 1332 (2d. Cir.1997) (in banc), *cert. denied,* 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998) (overruling *Binder v. Long Isl. Lighting Co.,* 57 F.3d 193 (2d Cir.1995)) (holding that a prima facie case plus pretext evidence is always sufficient to reach a jury). There is no reason to believe that the rule of *Fisher* is inconsistent with that of *Reeves;* indeed, it appears that they are two sides of the same coin. *See James v. New York Racing*

*Ass'n.,* 233 F.3d 149, 155 (2d Cir.2000) ("We conclude that the Supreme Court's reasoning in *Reeves* is wholly compatible and harmonious with our reasoning in *Fisher.* There is no inconsistency between the two rulings.")

5. Indeed, when plaintiff himself wrote a letter to the CEO of the BTA requesting a more favorable settlement package, he stated, "I was aware of the budgetary constraints within BTA however, I was convinced that BTA would find a position for me ...." Deft. Mem., Exh. C, at 77.

in addition to proportionate retirement benefits and pension contributions.

■ It is not, however, unlawful for an employer to dismiss an employee because of some objective factor which may in fact be closely correlated with age, such as seniority or benefits. In *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 608, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993), an unanimous Supreme Court held that an employer does not violate the ADEA "by acting on the basis of a factor, such as an employee's pension status or seniority, that is empirically correlated with age." *See also Criley v. Delta Air Lines,* 119 F.3d 102, 105 (2d Cir.1997) ("[E]mployment decisions driven by factors that are empirically intertwined with age are not discriminatory so long as they are motivated by 'some feature other than the employee's age'. Thus, decisions motivated by economic concerns do not violate the ADEA." (citations omitted)). Accordingly, BTA's evidence that it terminated Elliott because he was disproportionately highly compensated does not raise any inference of an ADEA violation.

Additionally, Elliott marshals no evidence whatsoever of any age-related comments or other specific evidence of animus on the part of his employers. *Cf. Schnabel,* 232 F.3d at 91 (noting that summary judgment for defendant was appropriate because plaintiff's case was far weaker than that of the plaintiff in *Reeves,* in part because he "failed to offer any evidence that he was subjected to any age-related comments or criticisms on the job.").

On the other hand, the only evidence supporting plaintiff's claims is, as discussed *supra,* his own affidavit, which alleges that a young female employee replaced him. However, despite the repeated inquiries from defendant as to the identity of this young woman, he has failed to state her identify with any specificity. Because he has failed to offer any specific detail from which a jury might reasonably infer discriminatory intent, summary judgment in favor of BTA is appropriate.

■ It is true that when a plaintiff's defense to a summary judgment motion consists solely of his affidavit, that is not insufficient evidence as a matter of law to survive the motion. *See Danzer v. Norden Sys.,* 151 F.3d 50, 57 (2d Cir.1998). In *Danzer,* however, a case in which defendant's summary judgment motion did not prevail, the plaintiff's affidavit had no "evidentiary infirmity," but instead was a "detailed" and "in-depth" chronicle of the events giving rise to the lawsuit. In the case at bar, however, the plaintiff's six-page affidavit fails to include a detail so basic as the identity of the alleged younger female replacement worker, and is replete with legal conclusions. *See, e.g.,* ¶¶ 15, 16, 19, 20, 27. In these circumstances, plaintiff's affidavit provides no more support for his claim than does his pleading.

Indeed, the very terms of Fed.R.Civ.P. 56(e) support the granting of defendant's motion. That rule provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Because plaintiff's allegations do rest on his pleadings, and because they do not set forth any specific facts showing that there is a genuine issue for trial, defendant's motion is granted, and plaintiff's discriminatory discharge claims are dismissed.

## C. Retaliation Claim

Plaintiff alleges that in retaliation for his complaints of age discrimination, defendant withdrew its offer of consulting ser-

vices to him. Defendant's motion for summary judgment on this claim is granted.

■ The ADEA also prohibits retaliation for complaints of age discrimination. *See* 29 U.S.C. § 629(d). In order to prevail on a retaliation claim, plaintiff must demonstrate: (1) that he was engaged in protected activity, (2) that the employer was aware of the activity, (3) that the employer took an employment action adverse to plaintiff, and (4) that the adverse action was causally connected to the protected activity. *See Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85 (2d Cir.1990) (listing elements of an ADEA retaliation claim). There is no doubt that plaintiff was engaged in protected activity which was known to defendant; he made a complaint to the EEOC on March 26, 1996. *See* Deft. Mem., Exh. C, at 81. However, the record does not support a finding that defendant BTA took any adverse employment action against Elliott.

■ The record is quite clear that BTA had made an offer of consultancy to Elliott upon his termination. Documents provided by defendant, most notable a letter from Hamblin to Elliott, go so far as to detail the number of weeks that Elliott would be spending in each location. However, that letter also stated quite clearly that "[T]hese opportunities would be based upon you establishing yourself as a company whose services we would be able to access. In speaking to our Accountant, I am sure that he will be able to advise you of the processes involved." Deft. Mem., Exh. C, at 87.

As this language makes clear, the offer of consultancy was a contingent one that depended upon plaintiff taking affirmative steps to organize an appropriate corporate form and contact defendant's agents to arrange the logistics. BTA asserts in its moving papers that Elliott never took those simple steps, and thus it should not be held liable for retaliation when it never

in fact took an adverse employment action against plaintiff. The ball, BTA argues, was entirely in Elliott's court and his failure to return it should not constitute an ADEA claim.

Elliott offers no evidence in response to these arguments. His affidavit on this point is entirely conclusory and offers no more detail: "[T]he adverse action taken against me by refusing to give me consulting assignments and the resulting connection between that refusal was in retaliation to [sic] the fact that I had filed charges of discrimination as is my statutory right. BTA refused to extend those consulting assignments to me because of my filing the discriminatory [sic] charges." This is the total sum of plaintiff's evidence on this issue.

The failure of BTA and Elliott to consummate the consulting relationship, in conjunction with Elliott's EEOC complaint, does state a prima facie case of retaliation that would survive a motion to dismiss under Rule 12(b). However, at this stage in the litigation plaintiff must be able to offer more than mere conclusory statements where it is reasonable to do so. Having offered no evidence that he took any steps to follow up on defendant's contingent offer of a consultancy, no reasonable jury could find defendant liable for retaliation.

### D. State Law Claims

Plaintiff's federal claims all having been dismissed, we decline to exercise our supplemental jurisdiction over plaintiff's remaining state law claims.

### CONCLUSION

For the above reasons, defendant's motion is granted, and all claims are dis-

missed. The Clerk of the Court is respectfully directed to close this case.

**IT IS SO ORDERED.**